## STATE OF IOWA v. JACK PHILLIPS, Appellant.

**Murder:** ARREST: DEGREE OF FORCE ALLOWED. An officer in
1   making an arrest is permitted to use no more force than to him, acting as an ordinarily prudent person would under like circumstances, seems reasonably and apparently necessary to effect the arrest, and proof of the absolute necessity for the force used is not required.

**Same.** In the prosecution of an officer for murder, who struck on the head and fatally injured the deceased while making an
2   arrest, it was shown that deceased had an exceedingly thin skull, and there was evidence that force, which, if applied to an ordinary head would cause no serious injury, might have produced a fracture of deceased's skull, it was for the jury to determine whether defendant used more force in making the arrest than was permissible.

Correction of Error on Rehearing. Where counsel has in fact and unintentionally overlooked an error in the original submission of a criminal cause in the supreme court, and it is one that may have misled the jury in reaching their verdict, the court will correct it, though raised for the first time on a rehearing.

Recalling Grand Jury. Where a grand jury is excused "until the second day of the next term, unless sooner called by the court" it may be recalled and legally investigate a cause at the same term.

Challenges to Grand Jurers. That defendant is not given opportunity to challenge grand jurors is not ground for setting aside an indictment.

*Appeal from Wapello District Court.*—HON. FRANK W. EICHELBERGER, Judge.

WEDNESDAY, APRIL 8, 1903.

THE defendant, having been indicted for murder in the first degree, and convicted of manslaughter, appeals. —*Reversed.*

*I. H. Tomlinson* and *M. A. McCoid* for appellant.

*Chas. W. Mullan,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the State.

LADD, J.—The accused was acting as special policeman in the town of Eldon during the period of the fair, and on the 4th day of September, 1900, had cautioned the deceased, Clarence Debard, who was somewhat intoxicated, against "kicking up a disturbance" and returning to the saloon. Notwithstanding this, the deceased undertook to return, but seems to have stopped on the way at a wienerwurst stand, and, while there, grabbed for, but did not reach, a knife. Thereupon he was put under arrest by defendant and taken toward the jail, all the time making resis an o by jerking and trying to get away, and also using profane and threatening language. This continued until

they reached a point in front of a printing office, where the defendant struck the deceased over the head with a club or "billy" such as is usually carried by policemen. The evidence is in conflict as to whether Debard had broken loose at the time, some of the witnesses testifying that there was no halt, and that the prisoner had not broken away, and others that he had, and had turned upon the defendant with his fists. In any event, he fell to the ground on one hip and his hand, and, though repeatedly requested, refused to arise and go with the officer. As the defendant walked around him, Debard turned, attempting to guard himself from seizure, and, as the officer reached for his shoulder, he kicked at him, and was dealt another blow on the head. The defendant denied striking the deceased more than twice, and in this is somewhat corroborated; but several eyewitnesses testified that he beat him on the head three or four times, and that, when last hit, deceased threw back his head, and fell to the ground unconscious. He was then carried to the jail by defendant and others, and died the next morning. From the time of his arrest until the last blow, the deceased was violent in manner and in speech, declaring that "there was not enough  *  *  *  officers in Eldon to take him to jail"; that "the officers could beat his head off, but could not take him"; that he would whip defendant if he would discard the "billy." Some of the evidence was to the effect that the first blow was very severe, and that the last ended all conscious resistance. Undoubtedly, the conduct of Debard was extremely exasperating, but his only offense prior to arrest was drunkenness and disorderly conduct.

The court, in the sixth paragraph of the charge, instructed the jury that: "The defendant had the right to use such a degree of force as was reasonably necessary to reduce said Debard to submission; and if resistance, if any there was, was violent and determined, the defendant was not required to make nice calculation as to the degree

of force necessary to accomplish the purpose.   But, to
excuse the taking of life in making an arrest in cases of
misdemeanor, it must be shown that the killing was nec-
essary to effect the object.   Hence, if you find from the
evidence in this case beyond a reasonable doubt that the
defendant, whilst making the arrest of Debard, struck him
with a club or billy, and that Debard died from the effects
of such blow, and you further find that it was not necessary
to strike and kill Debard, if he did, in order to effect such
arrest, you will find the defendant guilty of manslaughter.''

This general statement of the right of the officer finds
support in many authorities.   See *State v. Garrett*, 60 N.
C. 144 (84 Am. Dec. 359); *State v. Dierberger*, 96 Mo. 666
(10 S. W. Rep. 168, 9 Am. St. Rep. 380); 2 Bishop's New
Criminal Law, section 650; 1 Bishop's Criminal Procedure,
section 161; 1 Wharton's Criminal Law, 402 *et seg*; note
to *Hawkins v. Com.*, 14 B. Monroe, 147 (Ky.) (61 Am.
Dec. 163).   On the other hand, some authorities, while
admitting that the officer is never required to retreat, and
may meet force with force, seem to hold that in arresting
for a misdemeanor only, as well as preventing the escape
of a person after being arrested therefor, life may not be
taken, even though necessary to make the arrest or prevent
the escape, save when the officer has the reasonable appre-
hension of peril to his own life or great bodily harm.   1
McClain, Criminal Law, section 298; *Thomas v. Kinkead*,
55 Ark. 502 (18 S. W. Rep. 854, 15 L. R. A. 558, 29
Am. St. Rep. 68); *Brown v. Weaver*, 76 Miss. 7 (23
South. Rep. 388, 42 L. R. A. 423, 71 Am. St. Rep.
512); *Reneau v. State*, 2 Lea, 720 (31 Am. Rep. 626);
*U. S. v. Clark*, (C. C.) 31 Fed. Rep. 710;) 2 Am. & Eng.
Ency. Law, 849, and cases cited.   But the correctness of
the instruction in this respect is not challenged, for it was,
if anything, too favorable to the defendant.

Appellant does insist, however, that it is defective in
that (1) it requires a finding of absolute necessity in order

to justify the taking of Debard's life, and (2) that it

*1. Arrest; degree of force allowed.* excludes all question with respect to the result being accidental. The only answer to the first of these is the caution concerning nice distinctions as to the degree of the force employed. But this is followed by the unqualified statement that the killing, to be excusable, must have been necessary, and that, before the jury could convict, it must be found to have been unnecessary. Certainly, proof of absolute necessity was not required. The law exacted no more from defendant than that in what he did he employ no more force in effecting the arrest than to him, acting as an ordinarily prudent person, would, under like circumstances, seemed reasonably and apparently necessary to effect the arrest of deceased. Section 5194 of the Code. The state argues that, even if this instruction is not sufficiently explanatory, the error is cured in the instruction following. The error is the rather emphasized in that, for while exacting a finding that the killing was not necessary to justify a conviction, the jury are told to acquit if "you further find that it was reasonably necessary, taking into consideration all the circumstances in evidence, for the defendant to use such club or billy, if he did use one, in the manner it was used; and further find beyond a reasonable doubt that the defendant could not have effected the arrest of said Debard and, taken him to jail, without so using such club or billy, if he did use it." The matter is referred to only incidentally in the other instructions, and not in connection with the evidence.

The second criticism possibly is included in the first. The jury might have found that defendant had no intention of killing deceased. The post-mortem demonstrated

*2. Same.* that the latter had an exceedingly thin skull, and there was evidence tending to show that force which, if applied to the ordinary head, would cause no serious injury, might have produced a fracture in.

Debard's skull. If so, then death might have resulted from a blow of the "billy" applied with no greater force than might have seemed reasonably necessary to subject deceased to restraint, and the jury should have been advised that, if no more force was exerted than permissible as hereinbefore stated and yet death resulted because of the character of Debard's skull when had it been of ordinary thickness this would not have happened, the defendant should not be held responsible. As argued by the state there is much evidence tending to prove that the blows were severe and unnecessarily administered. The deceased was intoxicated and unarmed, as defendant knew. Bystanders were within easy call during the entire transaction and presumably would have rendered assistance, according to their duty, had this been required. But the defendant testified that the blows were not administered with unusual force, and it was for the jury to say from the evidence whether, under the circumstances disclosed, the defendant was justified in beating the prisoner in his inebriated condition, and, if so, whether more force was exerted in so doing than was permissible.

II. It is true, as contended by the state, that the points on which the judgment is reversed were made for the first time in the petition for rehearing. In civil

3. CORRECTION of error on rehearing. causes this alone would prevent reconsideration. But the law is more indulgent in actions involving the liberty of the citizen, and the practice has long prevailed in this court of granting rehearings for the purpose of correcting errors which might reasonably be thought to have vitally effected the result of the trial. Of course, the point must not have been intentionally omitted. If the accused has actually overlooked an error in the original submission, and it was such as might have misled the jury in reaching their verdict, the court will correct it on rehearing. But for this practice

having been adhered to for many years, the writer would be inclined to make no¹ distinction between civil and criminal actions in this respect, and to treat errors which have not impressed counsel sufficiently to be remembered and discussed in the first instance as having been waived.

III.   The grand jury, having completed the business then before it, was, on the 5th day of September, 1900, by the court adjourned "until the second day of next term, unless sooner called by the court"; and on the following day, it appearing "that since said adjournment important cases have arisen," the court ordered said grand jury to return on the 10th day of said month, during the same term, which it did, and subsequently found the indictment against the defendant.   He moved the court to set aside the indictment on the grounds (1) that the grand jury was not selected, drawn, summoned, impaneled, or sworn as prescribed by law; and (2) that, although the grand jury, after being discharged, was recalled for the sole purpose of investigating this case, defendant, though held to answer and in custody, was not permitted to appear in said court to challenge said jury. This motion was overruled.   It will be observed that the grand jury had not been discharged for the term, but excused from attendance until called by the court to return.   The authority of the court to do this is not questioned in argument.   Section 5252 of the Code directs that "the grand jury, on completion of its business, shall be discharged." This evidently means for the term of court at which it is impaneled, and does not limit the authority of the court to excuse the jurors from attendance temporarily, or until required again at the same term.   In the more populous counties such has frequently been the practice, and it is not open to just criticism.   The alleged irregularity in adjourning the jury and recalling it appears to be the only objection to the panel, and, regardless of

4. RECALLING grand jury.

whether the defendant was in a situation to raise the
point, we think it without merit. That defendant was not given an opportunity to challenge the jurors is not a statutory ground for setting aside an indictment. Section 5319 Code; *State v. Baughman*, 111 Iowa, 71.

**5. CHALLENGES to grand jurors.**

Other errors complained of are not such as are likely to arise upon another trial. For those pointed out, the judgment is REVERSED and the cause remanded for new trial.