STATE OF IOWA, Appellee, v. THOMAS E. HOWARD, Appellant.

**INDICTMENT AND INFORMATION:** Failure to File Exhibits. The
1  statutory direction that grand jury exhibits be filed with the clerk
   of the court is not *mandatory*. (Sec. 5258, Code Supp., 1913.)

**HOMICIDE:** Exclusion of Testimony in re Self-Defense. Subsequent
2  reception of testimony cures any former error in excluding it. So
   held as to testimony tending to show what the accused had been
   told, relative to the dangerous character of the deceased.

**CRIMINAL LAW:** Instructions—Repetition in re Reasonable Doubt.
3  The necessity for the State to prove all material allegations beyond
   a reasonable doubt need not be repeated throughout the instructions.

**HOMICIDE:  Killing in Order to Effect Arrest.**  A peace officer, whether he be such *de jure* or *de facto*, has no right to kill a person, (1) in order to arrest such person for a *misdemeanor*, or (2) in order to prevent the escape of such person from an arrest for a *misdemeanor*. It follows that an instruction, in such circumstances, which *inferentially* requires the accused to ''retreat'' is not prejudicially erroneous.

**CRIMINAL  LAW:  New Trial—Newly Discovered Evidence.**  The granting of new trials in criminal causes for newly discovered evidence is discretionary with the court.

*Appeal from Page District Court.*—E. B. WOODRUFF, Judge.

## JUNE 21, 1921.

DEFENDANT appeals from a judgment of conviction of the crime of murder in the second degree, sentencing him to imprisonment in the penitentiary at Fort Madison at hard labor for 15 years.—*Affirmed.*

*Wm. F. Stipe* and *H. E. Davidson,* for appellant.

*Ben J. Gibson,* Attorney General, and *B. J. Flick,* Assistant Attorney General, for appellee.

STEVENS, J.—The indictment in this case charged the defendant with murder in the first degree, committed August 22, 1919, in Page County, Iowa. The following will suffice for a general statement of the facts relating to and surrounding the occurrence. The tragedy occurred on the fairgrounds, in or near the city of Clarinda, shortly after midnight on the date mentioned. The defendant, who was employed by the fair association, was assuming to act as a peace officer, in the capacity of a deputy sheriff, and had been for several days, and during the fair. About midnight,—perhaps a little thereafter,—the defendant and one Pearl Anderson, who was also employed and serving as a police officer on the fairgrounds, went to a tent, referred to in the evidence as the implement tent, which was about 40 feet in length, or diameter, the sides of which were open. When they arrived at the tent, they found Terrance Welch, the deceased, William Frederickson, and John Green, sitting near

the center of the tent. The tent was lighted only by a near-by electric street lamp; but, according to the testimony of the witnesses, the light was sufficient to make at least the outlines of the parties clearly visible. After the exchange of a few words between Welch and Howard, an angry altercation occurred between them, in which there was considerable profanity; and, according to the testimony of several of the witnesses, some threats were made by the defendant, who, in the meantime, had taken a .38-caliber Hopkins & Allen pistol from his pocket, held it in his hand, and, during the conversation, pointed it at Welch. Welch's coat, which he had removed, was lying on the ground, or on a near-by platform. After the controversy began, Welch reached for his coat; whereupon the defendant stepped upon his fingers, and commanded him to be still. The defendant testified that his purpose in stepping upon Welch's fingers was to prevent him from getting the coat, in which he feared he had a gun concealed. The defendant directed Anderson to call Frank Pennington, the sheriff, which he did. Before the sheriff arrived, however, Milton Stafford, another peace officer, entered the tent, at which time the defendant was holding Welch's coat, and had the Hopkins & Allen pistol in his hand. Welch, observing Stafford, turned to him and said, in substance: ''Here is the law. I will go with this man.'' Almost immediately, he took hold of Stafford's right arm with his left hand, and the two started to leave the tent, in a southeasterly direction. Stafford testified that, before starting to leave the tent, he told defendant to put up his gun; but this is denied by the defendant. The defendant threw Welch's coat onto the platform, and Stafford picked it up and gave it to Welch.

The evidence showed that both the defendant and Welch called each other vile names, and that Howard threatened to shoot; but that no shots were fired until Welch and Stafford got outside of the tent, after walking perhaps 30 or 35 feet. The defendant followed Stafford and Welch, and, when the latter was about 2 or 3 steps from the tent, Welch turned, and attempted to strike the defendant with his first. Almost instantly thereafter, Howard fired a shot, the bullet entering Welch's back just below the scapula, taking a somewhat upward course, killing him instantly. There is some conflict in the evi-

dence as to what the defendant said after the shooting, several of the witnesses testifying, in substance, that they heard the exclamation from someone, "My God, you have shot him," and the defendant's reply, "Shut up, or I will give you the same thing." This was emphatically denied by the defendant, and the witnesses vary considerably in their testimony as to exactly what the defendant said. One or more witnesses testified that the defendant said he shot in self-defense. The defendant testified, upon the trial, that he had no intention of killing Welch, but only intended to shoot him in the arm. Stafford testified that he and Welch took a couple of steps, after the latter struck at the defendant, before the fatal shot was fired. The evidence all shows that but a few seconds elapsed between the attempted assault and the report of the pistol. Welch resided at Creston, and was employed as a waiter in a dining hall on the fairgrounds. While the defendant testified that Welch was doing some boastful talking when he approached the implement tent, it does not appear that he was creating a disturbance of any kind, nor that the implement tent was a rendezvous for immoral persons, nor that liquor was kept therein for sale or use. It is the claim of the defendant that his brother, Henry Howard, had, however, informed him that deceased was bootlegging on the fairgrounds, and that he had purchased a quantity of liquor of him, the delivery being made in a large Chautauqua pavilion on the grounds. Other facts material to the discussion and decision of the alleged errors of the court presented for review, will be referred to later. The defendant relied upon the plea of self-defense, and that he was, at the time of the tragedy, acting in his lawful capacity as a peace officer.

I. The pistol from which the shot was fired and exploded, and several loaded shells which were removed from the pistol after the shooting, were offered in evidence. Counsel for defendant objected to the admission thereof, upon the ground that all of said exhibits were before the grand jury, but were not properly identified and filed in the office of the clerk of the district court with the minutes of the testimony, as required by Section 5258 of the Code. The objection was overruled, and this ruling is assigned as error. The statute requiring exhibits used by the grand jury

1. INDICTMENT AND INFORMATION: failure to file exhibits.

during its investigation to be filed in the office of the clerk with the minutes of the testimony is directory only. *State v. Mulhern,* 130 Iowa 46; *State v. O'Malley,* 132 Iowa 696; *State v. Ottley,* 147 Iowa 329. And the failure to file the same in the clerk's office did not render them inadmissible. *State v. Mullenhoff,* 74 Iowa 271; *State v. Boomer,* 103 Iowa 106; *State v. Ottley,* supra.

II.   Henry Howard, brother of the defendant, called as a witness in his behalf, testified that he told the defendant that Welch was a dangerous man, and that, if the defendant attempted to arrest him, he might get hurt. This was stricken, upon the motion of counsel for the State, and this ruling is assigned as error. The record is not quite clear at this point; but, as we understand the ruling of the court, the only portion of the testimony of this witness that was stricken was that relating to the arrest of Welch and to his dangerous character. This was clearly the opinion of the witness only, and intended evidently as a caution or warning to the defendant, and is not a repetition of anything claimed to have been said by the deceased. The substance of what Henry Howard said to the defendant was later testified to by the defendant, without objection, and was not controverted. The ruling of the court was correct; and in any event, the exclusion of this testimony could not have been prejudicial.

2. HOMICIDE: exclusion of testimony *in re* self-defense.

III.   The defendant acted as a peace officer upon the fairgrounds during the fair by informal appointment and designation by the sheriff of Page County, who gave him a badge containing the inscription, "Deputy sheriff of Page County, Iowa," which he wore upon the lapel of his coat, and who also gave him the gun with which Welch was shot. The defendant did not, however, qualify as a deputy sheriff, as required by law. As we understand the record, he was paid for his services by the fair association. The defendant, however, contended in the court below, and also contends upon this appeal, that, notwithstanding the fact that his appointment was informal and not in writing, he acted as a peace officer in good faith, with the knowledge and acquiescence of the officers of the fair association and the public; and that, as such *de facto* peace officer, he was authorized to make an arrest.

The court refused to permit the defendant, in answer to questions propounded to him by his counsel, to testify that he had previously been doing special police duty for the sheriff. This ruling by the court is assigned as error. Ordinarily, evidence that a claimed *de facto* officer has been acting for a considerable period of time under some form of appointment is admissible in evidence, for the purpose of proving his status as such. Assuming, therefore, without deciding, that the defendant should have been permitted to testify that he had previously been employed by the sheriff to do special police duty, the ruling of the court, as will presently appear, was wholly without prejudice, and does not present a ground for reversal.

IV. The court gave the usual instructions as to the presumption of innocence and the burden of proof, and in the third paragraph of its charge, defined the words "reasonable doubt." 3. CRIMINAL LAW: In the next paragraph thereof, the jury was instructions: repetition *in re* reasonable doubt. further instructed that the burden rested upon the State to establish by the evidence, beyond a reasonable doubt, among other essentials, "that such killing was not justifiable on the defendant's part on the ground of self-defense." In both the eighth and ninth instructions, the court again told the jury that the burden was upon the State to show by the evidence that the killing of Welch was not justifiable on the part of the defendant on the ground of self-defense, but did not repeat in these instructions that the evidence must establish such fact beyond a reasonable doubt. These instructions are complained of because of the omission stated. Granting that it would have been better for the court to have repeated, in each of these instructions, that the burden rested upon the State to prove beyond a reasonable doubt that the defendant did not take the life of Terrance Welch in self-defense, the omission, following the prior instructions, could not have misled the jury. The charge must be read as a whole, and when so read and considered, it is impossible to believe that any doubt or confusion could have arisen in the minds of the jurors as to the degree of proof required upon this point.

V. No reference appears in any of the court's instructions to the claim of the defendant that he was acting as a *de facto* officer, or that, at the time of the alleged assault upon him by

Welch, the latter was under arrest; nor did the court define the rights and duties of peace officers in making an arrest, or in attempting to prevent the escape of a prisoner after the arrest has been effectuated. In the view we take of the case, it was immaterial whether the defendant was a *de facto* officer or not; but see the following authorities: *Herkimer v. Keeler,* 109 Iowa 680; *State v. Weston,* 98 Iowa 125; *Keeney v. Leas,* 14 Iowa 464; *Wilcox v. Smith,* 5 Wend. (N. Y.) 231 (21 Am. Dec. 213); *Town of Plymouth v. Painter,* 17 Conn. 585 (44 Am. Dec. 574); *Norton v. Shelby County,* 118 U. S. 425 (30 L. Ed. 178); *State v. Quint,* 65 Kan. 144 (69 Pac. 171); *State v. Carroll,* 38 Conn. 449 (9 Am. Rep. 409); *Prescott v. Hayes,* 42 N. H. 56; Constantineau on De Facto Doctrine, Chapter 9.

Instruction No. 9, which also related to the defendant's plea of self-defense, so far as the same is material to the exceptions urged upon this appeal, was as follows:

"If it appears from the evidence that, at the time the defendant killed the said Welch, the said Welch was trying to kill the defendant, or to do him some great bodily harm, or if it appears from the evidence, when viewed from the standpoint of the defendant, as a reasonably prudent and cautious person would have viewed the circumstances surrounding him and known to defendant at the time, the said Terrance Welch was apparently trying to kill this defendant, or to do him some great bodily harm, so that the defendant, when acting with reasonable prudence, had the right to believe and did believe that his own life was in danger, or his person in danger of serious bodily harm from an assault upon him by said Welch, *and that apparently, so far as shown by the evidence, there was no other way of escape from such peril, except to take the life of said Welch, then defendant was justified in so doing, on the ground of self-defense.*"

The complaint is of the italicized portion thereof. Counsel interpret this language of the instruction as imposing upon the defendant the duty of retreating, if retreat was reasonably necessary to protect his person from the assault and to avoid taking the life of his assailant, and contend that this is error, for the reason that an officer, while acting in the performance

of his lawful duty, is not required to retreat, to avoid taking the life of an assailant. Assuming that the defendant was a *de facto* officer, and that he had a right to arrest the defendant without a warrant, and that Welch, at the time the fatal shot was fired, was either under arrest or the defendant was in the act of arresting him, was he, upon the facts disclosed by the record, entitled to resist, by the use of a deadly weapon, the attempted assault which Welch was attempting to make upon him with his fists, or to have the offense, if any was committed by him, mitigated or reduced in degree because of that fact, even though no duty rested upon him to retreat? The only offense claimed to have been committed by Welch was a misdemeanor: that is, the unlawful sale of liquor. The rule established in this state is that an officer is not justified in killing a mere misdemeanant, in order to effectuate his arrest or to prevent him from escaping after an arrest has been made. *State v. Smith*, 127 Iowa 534; *State v. Phillips*, 119 Iowa 652; *State v. Nott*, 168 Iowa 617; *State v. Weston*, supra. See, also, note to *State v. Dunning*, 3 A. L. R. 1170.

In *State v. Smith*, supra, we said:

''While the authorities are not in harmony upon the proposition involved, the better rule seems to be that an officer is not justified in killing a mere misdemeanant, in order to effectuate his arrest or to prevent his escape after arrest. In such cases, it is better, and more in consonance with modern notions regarding the sanctity of human life, that the offender escape than that his life be taken, in a case where the extreme penalty would be a trifling fine or a few days' imprisonment in jail.''

A different rule is applied in cases of felony. Although the officer is not the arbitrary judge as to whether the necessity for taking life exists, that is ultimately a question of fact for the jury. *State v. Smith*, supra.

As previously stated, deceased had already voluntarily surrendered himself to the custody of Stafford, who was proceeding quietly with him away from the implement tent, where the controversy occurred. Although it is denied by the defendant, the evidence quite conclusively showed that he had threatened to shoot Welch,—perhaps without serious intention of doing so,—and had applied profane and opprobrious epithets to him.

Stafford testified that he did not have Welch under arrest, and the only reason given by the defendant for following the parties was that he wanted to accompany them for the purpose of filing an information against Welch. Stafford had hold of Welch with his right hand, and the latter was not in a position to inflict serious injury upon the defendant, and, so far as appears from the evidence, he was unarmed, and without means of doing so. Of course, Welch, by making an assault upon the defendant, committed a misdemeanor; but there is no theory of the evidence upon which the jury could possibly have found either that the defendant was attempting to make an arrest or to prevent Welch from escaping from the custody of Stafford, at the time he fired the fatal shot. The duty of defendant, under these circumstances, to avoid taking the life of Welch was not lessened by the fact that he may have been a *de facto* peace officer.

It is true, as said in *State v. Smith,* supra, an officer in the performance of his duty, as such, stands upon a different footing from a nonofficer. He has an affirmative duty to perform; and, so long as he keeps within proper bounds in the performance thereof, he should be protected by the law. In the performance of his duty in making an arrest and in the detention of a prisoner, he is necessarily the aggressor, and must often oppose force with force. In *State v. Nott,* supra, we said:

"In the seventeenth instruction, the jury was told, in substance, that defendant, in making the arrest, had the right to meet force with force, and, if the resistance were violent and determined, was not bound to make nice calculations as to the degree of force necessary to accomplish the purpose, but might exert such reasonable degree of force as might appear reasonably necessary to make the arrest and prevent escape; though he might not take life or inflict great bodily harm in order to make the arrest, unless he has a reasonable apprehension of peril to his own life or of suffering great bodily harm. This sufficiently advised the jury that the officer was not bound to retreat or call for assistance. *State v. Weston,* supra; *Boykin v. People,* 22 Col. 496 (45 Pac. 419); *Lynn v. People,* 170 Ill. 527 (48 N. E. 964)."

No doubt, a public officer who is attacked while in the exercise of his lawful duties is not required to retreat. If it can be

said that the defendant in the case at bar was, at the time of the tragedy, engaged in the performance of an official duty, it was, at most, in the merest technical sense. Possibly, the evidence would justify the inference that he was keeping himself in a position ready to assist Stafford, if assistance became necessary. He testified, however, as stated above, that he was following the parties for the purpose of filing an information against Welch.

It will be observed that the court did not, in terms, instruct the jury that it was the duty of the defendant to retreat, if necessary, in order to avoid killing his assailant, but did instruct that he had the right to take the assailant's life in self-defense only if, apparently, no other way of escaping from the peril of the assault was open to him. At most, the duty to retreat, if expressed at all by the instruction, is by implication, and it is highly improbable that the jury would have understood the instruction as imposing such duty upon the defendant. The evidence relating to the immediate tragedy is without substantial dispute, and shows that the defendant was not in imminent peril, or likely to receive a great bodily injury from the attempted assault of deceased, or to suffer death. If the record disclosed that, at the time the assault was made, the defendant was attempting to arrest Welch, or to prevent his escape from the custody of Stafford, or that he was in the actual performance of an affirmative official duty of a similar character, the instruction might have been prejudicial.

As stated, the evidence showed that the bullet entered the body of deceased from the rear. One of the medical witnesses testified that the only open wound he found on the body of deceased was on the left side, at about the lower angle of the scapula, and 2½ inches to the left of the spinal column. The only other physician who examined the body testified to substantially the same location of the wound, but further testified that he found a protuberance about 2 inches above the nipple, and probably an inch to the left and toward the center of the body, indicating a slightly upward course of the bullet. Stafford, describing the tragedy, testified:

"Welch turned around and struck at Howard, and that knocked my hand loose from his arm. Immediately I turned

him around, and started off, and I threw my hand up on his arm [indicating]; and, as we started off again,—I expect taken a couple of steps,—and Howard shot him.''

It is our conclusion that, even if it were conceded that the instruction was technically erroneous, the error was harmless.

VI.   The last sentence of Instruction No. 17 is as follows:

''The provocation, however, which will mitigate the crime and make it manslaughter instead of murder, must be recent and great, such as is calculated to arouse the passions, and it must also appear that the killing was done before there was time for reflection or for the passions to subside; else the killing, though done in passion, will be murder.''

This portion of the instruction is criticized.   It is contended by counsel that the court should have, instead, in substance instructed the jury that the defendant had the right to use any reasonable means within his power to arrest and control the deceased; and that if, in the excitement, and under the circumstances shown, he exceeded or used more force than was necessary to retain the custody of the deceased, or more than what seemed reasonable to the defendant, then he could be convicted of no offense greater than manslaughter.   An instruction substantially to the same effect was requested by the defendant. The instruction given is not open to the criticism lodged against it.   The record discloses no evidence whatever tending to show that the defendant, at the time the shot was fired, was in the act of arresting or attempting to arrest the deceased, or of preventing his escape from custody.   As already shown, the defendant did not have a right to take the life of Welch, either to effectuate his arrest for a mere misdemeanor or to prevent his escape.   The offense, therefore, of the defendant was in no sense mitigated by the fact that he was a peace officer.

Other alleged errors of the court in rulings upon objections to testimony and in the instructions given and instructions requested and refused are urged by counsel for appellant, but they are either without merit or are disposed of by what has already been said.

VII.   Evidence was offered by the defendant to show that he was possessed of a law-abiding and peaceful disposition, and also that the deceased was of a reckless, violent, and quarrel-

some disposition. The court instructed the jury that it should take the evidence offered to show the good reputation of the defendant as to being a peaceable and law-abiding citizen into consideration, in determining his guilt or innocence, and also that they should take into consideration the evidence tending to show that deceased was possessed of a reckless, violent, and quarrelsome disposition, in determining who was the aggressor, who began the controversy, and what the defendant might reasonably believe the deceased might do; and also, as bearing upon the guilt or innocence of the defendant. The instructions are not open to the exceptions urged, and, while not aptly phrased, were not erroneous.

VIII. Some evidence offered for the purpose of impeaching the two young men who were with deceased in the implement tent when the defendant and Anderson approached them, was introduced in his behalf. Complaint is made of the court's instruction advising the jury as to the weight and effect to be given to such testimony. The instruction is not very clear or complete, but it is not erroneous; and, as there was little conflict in the material facts touching the actual occurrence, it could not have been prejudicial.

Lastly, it is contended by counsel for appellant that the defendant did not have a fair and impartial trial; that the verdict of the jury was the result of prejudice and passion; that the instructions of the court as a whole 5. CRIMINAL LAW: failed to fairly present the law applicable to new trial: newly discovered evidence. the facts of the case; that the court committed error in overruling defendant's motion for new trial and amendment thereto. One of the grounds of the motion for new trial was newly discovered evidence. The newly discovered evidence appears in the affidavit of one Harley V. Barnett who stated therein that he was employed by the Clarinda Fair Association; that he had charge of the automobile gate at the north entrance to the fairgrounds; that he saw deceased when he passed through the gate on Tuesday, the opening day of the fair; that he heard him say that "any damn officer who tries to arrest me, I will sure make him eat dust;" that deceased was wearing a dress coat, and carrying another dress coat on his left arm; that one of the side pockets of the coat he was carrying was hanging be-

low the lining, plainly showing the outline of a revolver; that he, at the time, called the attention of another police officer to the appearance of the coat. He does not state that he had not previously talked about the incident, or that he tried to conceal it from the defendant. The only other affidavit filed was that of the defendant, in which he states that he believes the alle gations of Barnett's affidavit to be true, and that neither he nor his counsel had knowledge thereof before the verdict of the jury was returned. No diligence whatever on the part of the defendant to discover said facts was shown, nor is any reason assigned why these facts were not discovered in time to have been offered in evidence upon the trial. In any event, the provisions of Code Section 3755 for a new trial upon the ground of newly discovered evidence are not applicable to criminal cases. The granting of a new trial upon that ground in criminal cases is discretionary. *State v. Pell,* 140 Iowa 655.

The defendant testified that he heard the deceased making boastful threats against officers; but, except for a single sale of liquor to the defendant's brother, and the occurrence at and near the implement tent, the deceased appears to have created no disturbance during the fair, and to have observed good order.

The motion for new trial was properly overruled; and, so far as we have been able to discover by a careful examination of the record and the briefs and arguments of counsel, the defendant had a fair trial, and no ground for reversal appears. It follows that the judgment of the court below must be and is— *Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.