A. E. GOOLD, Appellant, v. T. T. SAUNDERS et al., Appellees.

**ASSAULT AND BATTERY:** Actions—Wrongful Arrest. Wrongful assault and trespass upon the person, and not negligence, are the gist of an action for damages consequent on the plaintiff's being injured in the course of an unlawful arrest without a warrant, though it is manifest that, under such circumstances, negligence on the part of the officer making the arrest may be an element which will destroy his plea of official immunity.

**ASSAULT AND BATTERY:** Actions—Identity of Assailants. Record reviewed, and held to present a jury question on the issue whether the defendants were the parties who assaulted the plaintiff.

*Appeal from Cass District Court.*—O. D. WHEELER, Judge.

JUNE 22, 1923.

REHEARING DENIED SEPTEMBER 22, 1923.

ACTION for damages for personal injuries sustained by plaintiff as a result of shooting and the discharging of shots into his person by the defendants. The answers of the several defendants were, in effect, a general denial. At the close of the evidence for the plaintiff, there was a directed verdict for the defendants. The plaintiff appeals.—*Reversed and remanded.*

Swan, Clovis, Swan & Martin and W. A. Follett, for appellant.

J. N. Parsons, E. S. Holton, H. P. Ziegler, and Lynch & Byers, for appellees.

EVANS, J.—On the night of June 11, 1921, at about 1 o'clock A. M., while driving westward on the highway into the town

of Anita, the plaintiff was severely injured by a fusillade of

1. ASSAULT AND
BATTERY: ac-
tions: wrongful
arrest.

shots. At the place in question, on both sides of the highway, a considerable part of the population of the town of Anita had congregated, with a view to discovering and arresting certain supposed robbers who were reported to have robbed a station agent and taken from him six sacks of mail at the town of Arion, 100 miles northwesterly from Anita. This was supposed to have occurred at about 9 o'clock P. M. The plaintiff was engaged in his regular occupation as liveryman. He was approaching the town of Anita from the east, in an automobile occupied by himself and Earl Alexander. Alexander was the lineman of a telegraph company, and had spent the day in locating trouble points along the line between Atlantic and Valley Junction. He had employed the plaintiff to transport him, and the day had been thus spent. They were making a long drive from Valley Junction home after night. It was while on their home trip that the shooting occurred. More than 125 shots were lodged in the person of the plaintiff.

Defendant Dean was the city marshal of Anita. He received notice of the mail robbery, and was notified also that the two robbers were driving a large car. He also received notice from the marshal of the town of Adair, located east of Anita, that two men in a Dodge car had passed through the town of Adair, driving hard. On the supposition that these men were the robbers, Dean made preparation to arrest them. The highway passed straight through the town. Dean summoned help. Just how many people received his direct summons does not appear; but a large number came to the scene of action. Dean posted a guard on the south side of the highway, some distance east of the town. He took a position himself about 10 rods farther west than his guard. Still farther west, he erected a barricade across the highway, just at the edge of town. This barricade consisted of automobiles put in appropriate position and burning their lights. The plaintiff and his companion were driving hard. The road was muddy, and their cut-out was open. Their approach, therefore, could be heard for a long distance before their arrival. As they approached the place of the first guard, he came forward with a call of "halt." Believing that

he was attempting a "holdup," they "stepped on her," and hurried forward. He fired over their heads. Thereupon, Dean came forth and called "halt," with the same result. He fired at the gas tank, and hit the mark. A moment later and before the plaintiff had reached the barricade, several shots were fired in quick succession from the north side of the road. These shots, figuratively speaking, riddled the automobile and its tires, as well as the person of the plaintiff. His companion was also injured, but not disabled. This shooting brought the car to a stop, and the occupants were ordered to come out, in order to be searched. Alexander complied. The five defendants, under the leadership of Dean, came forward out of the crowd, with guns in their hands, and, in effect, put Alexander under arrest, and searched him. They soon discovered that they had made a terrible mistake. Doctors were sent for, who were put in charge of the plaintiff. The foregoing statement of facts is virtually undisputed.

I. From the foregoing statement of facts, it would seem reasonably clear that the plaintiff had a prima-facie case against somebody. We have been at some difficulty to discover from the record just what it was that happened to plaintiff's case. The general denial necessarily put in issue the identity of the defendants as the perpetrators of the wrong. At the trial, the defendants severally filed amendments to their answer, wherein they pleaded affirmatively, and apparently with a view of justification or mitigation. The official character of Dean was pleaded in his behalf, and his good-faith attempt to apprehend the mail robbers. On behalf of the other defendants, or some of them, it was pleaded that they acted, in all that they did, in obedience to the call of Dean, as city marshal. None of these amendments, however, pleaded a confession and avoidance. On the contrary, all of them reiterated the original denial of any connection with the shooting which resulted in plaintiff's injury.

The record discloses that, at the close of the evidence, a considerable colloquy ensued between court and counsel, wherein the court requested counsel for plaintiff to state the theory upon which they predicated their right of recovery. The petition charged the defendants both with an unlawful assault and with negligence. There was some disagreement between the respective

counsel for the plaintiff as to whether *assault* should be deemed the gist of the action or whether *negligence* should be deemed the gist thereof. The net result of the colloquy was that the leading counsel for plaintiff (not now in the case) stated to the court that he predicated his right of recovery upon the alleged *negligence* of the defendants, as the gist of the action. Thereupon, the court directed a verdict for the defendants, apparently upon the ground that, upon the facts appearing in the record, an action of negligence would not lie; and apparently upon the ground, also, that he could not submit to the jury the question of unlawful assault, under a petition declaring specific negligence, because the theory of assault and that of negligence were inconsistent, and could not coexist.

The petition of plaintiff is not to be commended for its form. It indicated uncertainty in the mind of the pleader as to what the gist of his action was. The material facts constituting the cause of action, however, were pleaded. The court was not bound by the pleader's indecision as to the law of the case, nor could the court properly ignore the facts pleaded, simply because the plaintiff himself had not digested them.

The gist of plaintiff's action was *not negligence*. The gist of it was the *wrongful assault* and the resulting trespass and injury upon the plaintiff's person. It was a mistake, however, to suppose that there was a necessary inconsistency between such an assault and negligence. Intentional assault is a graver wrong than an unintentional negligence. The quality of negligence is often included in intentional and even criminal wrongs. In such a case, the negligence is submerged, so to speak, and thereby disappears, though it still exists, like a submerged mount on the floor of the sea. In this case, the jury could find that the quality of negligence was present, not as the gist of plaintiff's cause of action, but as a destroyer of a possible affirmative defense by the defendants. If the defendants had pleaded immunity from liability on the ground of the official character of Dean, and on the ground that he and they were acting in an official capacity in the performance of official duty, then the question of whether they acted as reasonably prudent men, under the circumstances, would become material. If, in their arrest of plaintiff and in the manner thereof, they did not

act as reasonably prudent men under like circumstances, this is only another way of saying that they were negligent. A public official may be guilty of negligence in the performance of official duties, for which his official character gives him no immunity. The right of Dean as a peace officer to make the arrest of the plaintiff is set forth in the following three sections of the Code:

"Section 5194. * * * No unnecessary force or violence shall be used in making the same, and the person arrested shall not be subjected to any greater restraint than is necessary for his detention."

"Section 5196. A peace officer may make an arrest * * * without a warrant: * * * 2. Where a public offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it."

"Section 5199. The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of arrest, of his authority to make it, and that he is a peace officer, if such be the case, and require him to submit to his custody, except when the person to be arrested is actually engaged in the commission of or attempt to commit an offense, or escapes, so that there is no time or opportunity to do so."

It will be seen from Section 5196 that Dean had to have reasonable grounds for believing that the plaintiff was guilty of the mail robbery. Whether he had such ground would be a question for the jury, under all the circumstances. If he had no such ground, his defense failed. If he had no such reasonable ground, he was negligent. Under Section 5194, the arresting officials were required to use no "greater restraint than is necessary." In the construction of these statutes, we have uniformly held that the criterion of reasonable ground of belief, and of the degree of force which may properly be used in making an arrest, is that which a reasonably prudent person would exercise under like circumstances. A failure to respond to the standard as to what a reasonably prudent person would do under the same or like circumstances is the equivalent of negligence. Such negligence, however, is not the true basis of plaintiff's cause of action; but it supports his cause of action, in the sense that it destroys the defense of official immunity.

Though the defense of official immunity was not interposed by the defendants, except inferentially, yet the facts appearing in evidence suggest it, and the parties in colloquy seem to have taken it for granted. Though the defendants pleaded the official capacity of Dean, they did not claim immunity under it, but reiterated their denial of having any part in the shooting. The denial was itself a complete defense. But if defendants had pleaded affirmative justification or mitigation, then the alleged negligence which so impressed the mind of counsel would have been available to him in rebuttal of defendants' evidence tending to support such defense.

II. One other matter remains to be considered. The general denial put in issue the identity of the perpetrators of the shooting. Was there sufficient evidence to go to the jury on that question? Immediately following the shooting, Alexander obeyed the call to come out of the automobile and to submit to search. The five defendants came forward to make the search. They were all armed. This was the testimony of Alexander. In effect, they held him under arrest while the search was made. They made such arrest immediately pursuant to the shooting which brought the automobile to a stop. Though the defendants, each and all, denied having any part in the shooting, and some of them denied their presence in the group which searched Alexander, this, in our judgment, only made an issue for the jury. The testimony of Alexander made a sufficient prima-facie case of identity, and the credibility of such evidence, as against the denials of the defendants, was for the jury. The order of the dismissal of plaintiff's case is, therefore, reversed, and the cause remanded.—*Reversed and remanded.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.