Olive Klinkel, Administratrix, Appellant, v. P. A. Saddler et al., Appellees.

No. 40025.

December 9, 1930.

*F. A. Ontjes* and *W. G. Henke,* for appellant.

*H. J. Fitzgerald* and *J. C. Campbell,* for appellees.

KINDIG, J.—Olive Klinkel is the duly appointed, qualified, and acting administratrix of Donovan E. Klinkel's estate. She is the plaintiff-appellant. P. A. Saddler, during all the times herein named, was the duly elected, qualified,  and acting sheriff of Floyd County, and the National Surety Company, during that time, was the surety on the sheriff's official bond. The sheriff and the Surety Company are the defendants-appellees. On the 8th day of May, 1927, the sheriff shot and killed appellant's intestate, Donovan E. Klinkel, at Charles City. To recover damages for that death, the present action was instituted. As said in the preamble of this opinion, a jury found against appellant on the facts, and judgment was entered accordingly. In order to reverse that judgment on this appeal, appellant assigns 22 errors, but we find it necessary to consider but two of them. Those errors which will be discussed relate to the court's instructions.

I. First, the appellant complains because the district court did not inform the jury that the burden was upon the sheriff to prove that he shot appellant's intestate in self-defense. Some confusion appears among the decisions of the various states in reference to this subject-matter. What the rule may be under other facts and circumstances, we do not now decide; but, under the record in this case, it is apparent that the sheriff had the burden of pleading and proving self-defense. Appellant, in her petition, stated as follows:

"Plaintiff [appellant] further states that, on or about the 8th day of May, 1927, the defendant P. A. Saddler [the appellee sheriff], while acting as sheriff of said county, and by virtue of his office as such sheriff, wrongfully and unlawfully assaulted plaintiff's intestate, Donovan E. Klinkel, with a deadly weapon, to wit, a pistol or revolver, and did then and there with said deadly weapon shoot a bullet into the body of said decedent, inflicting upon him a wound of which he shortly thereafter died: That the defendant [the appellee sheriff] P. A. Saddler, in committing the act aforesaid, was acting by virtue of his office as

sheriff of said county. That said Saddler was acting without a warrant, and that, at the time of said assault, the said Donovan E. Klinkel was and had been guilty of no crime or misdemeanor or offense against the law and that the defendant Saddler was acting without reasonable grounds for believing that a felony had been committed.''

It is not specifically stated in the petition that the sheriff shot appellant's intestate while attempting to arrest him. Nevertheless, the inference to be drawn from the petition is to that effect. Moreover, the appellant made statements in the pleading to indicate that the sheriff had no right, in any event, to lawfully arrest her intestate. Nothing appears in the petition to suggest that the sheriff acted in self-defense while making an arrest.

By way of answer, the sheriff admitted his official capacity, the representative capacity of the appellant, and the suretyship of the National Surety Company. Furthermore, the sheriff conceded that he, by the use of a deadly weapon, used in a deadly and dangerous way, shot and killed the appellant's intestate, Donovan E. Klinkel, on the date named in the petition. Not being content to rely upon a general denial of appellant's petition, and wishing to go further, the sheriff affirmatively answered that he was making a lawful arrest, and killed in self-defense. That part of the sheriff's answer setting forth the affirmative defense reads in this manner:

''This defendant [the appellee sheriff] for further answer states that, on the 8th day of May, 1927, while acting as sheriff of Floyd County, Iowa, and acting in his official capacity as such, he received information that his attention was needed at or near Oak Park, Charles City, Iowa. That, upon arriving at Oak Park, he found decedent and eight other persons with him, including two women, assembled in Oak Park for unlawful purposes, having liquor in their possession, and two of them being then intoxicated, one of them having exposed his person. That defendant placed all of said parties under arrest, including decedent, and told them to stay where they were. The decedent resisted arrest, and, in company with the two women and another man, attempted to leave Oak Park by starting his car towards this defendant. That this defendant stopped said car, and there-

upon decedent sprang from his car, saying to the defendant, 'Now is where I get you, you God-damned son-of-a-bitch,' and proceeded to rush defendant, and advanced towards him in a crouched position and threatening manner, using vulgar and profane language. This defendant pointed his revolver at said decedent, retreating a few paces, and called upon said decedent to halt, that he was under arrest, and again called on him to halt, that he was under arrest, and told him and warned him, if he did not halt, he would shoot. That instead, decedent continued to rush and advance towards this defendant in a crouched position and threatening manner. That this defendant retreated a second time, three or four steps, again calling on said decedent to halt, or he would shoot. Said decedent kept advancing towards this defendant in the aforesaid manner until within about 5 feet from him. That this defendant, then believing that his life was in danger, shot said decedent, in self-defense.''

Under those issues, appellant's witnesses sustained her petition, while those testifying for the appellees substantiated the affirmative defense set forth in the answer. Nothing appeared in the testimony of appellant's witnesses which in any way suggested or showed that the sheriff shot in self-defense. Rather than so doing, that evidence negatived any such idea. On the other hand, the sheriff's evidence supported the affirmative allegations of his answer, and indicated that he shot in self-defense, while lawfully arresting appellant's intestate, Donovan E. Klinkel.

When instructing the jurors, the district court told them that it was incumbent upon appellant to prove the allegations of her petition, but said nothing about appellees' duty to substantiate the affirmative allegations of the answer. Regarding this, appellant complains. Due to the arrangement and statement of the issues in the court's instructions, the laymen-minded jurors naturally would be persuaded that the burden of proving no basis for the self-defense was upon the appellant. So there is here presented a case of erroneous instruction, rather than non-instruction, upon the subject. Manifestly, under the circumstances here disclosed, the duty of proving self-defense was upon the sheriff. He asserted self-defense in order to affirmatively avoid appellant's cause of action. Consequently, the obligation

was upon him to carry that issue. *Cobb v. Owens,* 150 Ala. 410 (43 So. 826, 827) ; *Bourne v. Richardson,* 133 Va. 441 (113 S. E. 893, 900). See, also, *Goold v. Saunders,* 196 Iowa 380; *Petrie v. Cartwright,* 114 Ky. 103 (70 S. W. 297) ; *Love v. Bass,* 145 Tenn. 522 (238 S. W. 94) ; *Graham v. State,* 31 Okla. Cr. 125 (237 Pac. 462).

Especially is that true when, as here, first, the killing was by the use of a deadly weapon, utilized in a deadly and dangerous way, and second, the petition relied upon by appellant did not suggest in any way that the sheriff acted in self-defense. See *Goold v. Saunders* (196 Iowa 380), supra, and *State v. Phillips,* 119 Iowa 652. Appellees at this point rely upon *Welch v. Creech,* 88 Wash. 429 (153 Pac. 355). That case, however, when properly analyzed, is not necessarily inconsistent with the rule here announced. There the Washington court, in effect, conceded that the burden of proof in the first instance was upon the plaintiff, and then launched into an extensive discussion for the purpose of distinguishing between the ''burden of proof'' and the ''duty to go forward with the evidence.'' Because the ''*res gestae*'' showed the defendant's self-defense, the Washington court said that he, regardless of the burden of proof, could rely upon such facts and surrounding circumstances. Nothing in that case, however, indicates that, under the pleadings and circumstances of this record, the burden of proof, in the respect under consideration, is not upon the appellees.

A killing caused by the use of a deadly and dangerous weapon, used in a deadly and dangerous manner, even in a  criminal case, when unexplained, raises the presumption of murder. *State v. Leib,* 198 Iowa 1315 (local citation 1322). In the *Leib* case we said:

''The use of a deadly and dangerous weapon in a deadly and dangerous manner raises a presumption of malice, and therefore of murder; but in such instances, the presumption is of murder in the second, and not in the first, degree. *State v. Phillips,* 118 Iowa 660. The intent to kill may be inferred from the use of a deadly weapon in a deadly and dangerous manner * * *.''

Necessarily, then, the sheriff, having used a dangerous and

deadly weapon in a dangerous and deadly manner, under the circumstances named in his answer, must prove the allegations thereof, in view of the fact that the appellant did not, in her pleading, tend to show that the officer acted in self-defense. Further discussion will clarify at this juncture. Section 13465 of the 1927 Code provides:

"Arrest is the taking of a person into custody when and in the manner authorized by law, and may be made at any time of any day or night."

While Section 13466 of the same Code declares:

"An arrest is made by an actual restraint of the person to be arrested, or by his submission to the custody of the person making the arrest. No unnecessary force or violence shall be used in making the same, and the person arrested shall not be subjected to any greater restraint than is necessary for his detention."

Following the foregoing is Section 13468 of that Code, which reads:

"A peace officer may make an arrest in obedience to a warrant delivered to him; and without a warrant:

"1. For a public offense committed or attempted in his presence.

"2. Where a public offense has in fact been committed, and he has reasonable ground for believing that the person to be arrested has committed it."

The concession is made by the sheriff that he had no warrant, when attempting to arrest the appellant's intestate. No felony had been committed, according to the sheriff's claim at the trial, as shown by the record, and recognized in the court's instructions. Hence, the attempted arrest was for a misdemeanor only.

It has been the repeated holding of this court that an officer arresting for a misdemeanor cannot intentionally kill the offender. Concerning this, we said in *State v. Smith*, 127 Iowa 534, on pages 536 and 537:

"While the authorities are not in harmony upon the propo-

sition involved, the better rule seems to be that an officer is not justified in killing a mere misdemeanant in order to effectuate his arrest, or to prevent his escape after arrest. In such cases it is better, and more in consonance with modern notions regarding the sanctity of human life, that the offender escape, than that his life be taken, in a case where the extreme penalty would be a trifling fine or a few days' imprisonment in jail. * * * The general rule does not, according to the great weight of authority, apply to felonies. Here, an officer may oppose force to force, and, if there be no other reasonably apparent method for effecting the arrest or preventing the escape of the felon, the officer may, if he has performed his duties in other respects, take the life of the offender.''

For similar holdings, see *State v. Phillips* (119 Iowa 652), supra; *State v. Towne,* 180 Iowa 339; *State v. Howard,* 191 Iowa 728 (local citation 735). Obviously, then, the sheriff had no right to kill appellant's intestate unless the act was done in self-defense. *State v. Smith* (127 Iowa 534), supra; *State v. Phillips* (119 Iowa 652), supra. Even though the officer cannot intentionally kill the offender when making an arrest for a misdemeanor, yet in making such arrest the officer need not retreat, and when he ''has the reasonable apprehension of peril to his own life or great bodily harm'' to his person, he may kill the aggressor. *State v. Phillips* (119 Iowa 652), supra (local citation 655).

Here, in the record before us, it appears from the appellees' own evidence that the attempted arrest was for a misdemeanor, and consequently the sheriff, under the foregoing authorities, could not kill appellant's intestate except in self-defense. Assuming that, upon the occasion in question, it was not incumbent upon the sheriff to retreat, yet he could not kill except in self-defense. In view of the weapon used, and the nature of appellant's pleading, the obligation to prove self-defense, under the circumstances, was upon the sheriff. When reaching this conclusion, however, we recognize the distinction between the rights of an officer to kill in the performance of his duty, and those of an unofficial individual to take a human life, as we said in *State v. Smith* (127 Iowa 534), supra, on pages 537 and 538:

''He [an officer] is a minister of justice, and entitled to the

peculiar protection of the law. Without submission to his authority there is no security, and anarchy reigns supreme. He must, of necessity, be the aggressor, and the law affords him special protection. In his capacity as an individual, he may take advantage of the 'first law of nature,' and defend himself against assault; as an officer, he has an affirmative duty to perform, and in the performance thereof he should, so long as he keeps within due bounds, be protected. Sentimentalism should not go so far as to obstruct the due administration of law, and brute force should not be permitted to obstruct the wheels of justice.''

So, in the case at bar, the sheriff, while making lawful arrest for a misdemeanor, if he was so doing, was not required to retreat. Yet, while that is true, the law did not license him to kill appellant's intestate unless the same appeared necessary, in self-defense. Therefore, under the record, it is incumbent upon the sheriff to prove that he acted in self-defense; and, because the district court did not so instruct, error arose.

II. Appellant, in the second place, complains of another instruction. Reference is made to the district court's charge to the jury, known as Number 8. There, that tribunal told the  jury that, even though the sheriff was not making an arrest of appellant's intestate, Donovan E. Klinkel, at the time in question, yet, if he acted in self-defense, regardless of the arrest, the appellant could not recover.

Self-defense, unconnected with the arrest, was not pleaded by the sheriff, nor does the record tend to support self-defense, independent and removed from the non-duty of the sheriff to retreat while making the arrest. Immediately before, and at the time, Klinkel was shot, the sheriff, under his evidence, was trying to arrest the offender. At no time during the encounter did the sheriff cease in his attempt to make such arrest. Continually the sheriff was pointing his gun at Klinkel, and never for a moment revoked his alleged authority to arrest. No evidence appears that the sheriff at any time tried to cease his attempt to arrest with a gun and retreat from the conflict, although, under the record, the jury might find that he could have done so. See *State v. Marish,* 198 Iowa 602. Moreover, the

fact-finding body might have been justified in concluding that the sheriff should have retreated, had he not, in fact, been making the arrest. Under the record, as above explained, the instruction should not have been given.

Because of the errors found, the judgment of the district court must be, and hereby is, reversed.—*Reversed.*

MORLING, C. J., and EVANS, STEVENS, FAVILLE, ALBERT, WAGNER, and GRIMM, JJ., concur.