**PEOPLE OF STATE OF COLORADO, for Use of LITTLE, v. HUTCHINSON et al.** [*]

(Circuit Court of Appeals, Eighth Circuit. November 9, 1925.)

No. 7096.

**1. Arrest ⬄63(4)—Sheriff without warrant held justified, under the facts, in arresting plaintiff driving car.**

In view of Comp. Laws Colo. 1921, §§ 1376, 1379, a sheriff, receiving notice from neighboring sheriff to look for woman who was driving a stolen car, engine number of which had been changed, and who had been arrested, but had escaped, was justified in arresting plaintiff (a woman), who was driving a car, even though he had no warrant.

**2. Arrest ⬄68—Assault and battery ⬄42—Officer can use only reasonable force in making arrest, and question ordinarily for jury.**

Regardless of Comp. Laws Colo. 1921, § 6793, officers do not have absolute license to use any force they may choose in making arrests, but must use only reasonable force, and what amounts to reasonable force depends on facts of each particular case, and is ordinarily a question of fact for jury.

**3. Trial ⬄139(1)—When trial court justified in directing verdict for defendant stated.**

A trial court is justified in directing a verdict for defendant, where the evidence is of such a conclusive character that, in the exercise of its sound judicial discretion, it would have been compelled to set aside a verdict for plaintiff.

**4. Sheriffs and constables ⬄171—Whether sheriff used more force than reasonably necessary held question for jury.**

Whether sheriff, in arresting plaintiff, used more force than was necessary, *held*, under the evidence, a question of fact for jury.

In Error to the District Court of the United States for the District of Colorado; J. Foster Symes, Judge.

Action by the People of the State of Colorado, for the use of Lenora Little, against Joseph M. Hutchinson and another. Judgment for defendants, and the use plaintiff brings error. Reversed and remanded, with instructions.

Edwin H. Park, of Denver, Colo., for plaintiff in error.

Before LEWIS and KENYON, Circuit Judges, and MUNGER, District Judge.

KENYON, Circuit Judge. This suit is one for damages in the sum of $10,000 brought by Lenora Little, a citizen of Oklahoma, against Joseph M. Hutchinson, sheriff of Chaffee county, Colo., and the American Surety Company of New York, as surety on his official bond, for injuries sustained by the

*Rehearing denied February 13, 1926.

plaintiff in error on the 8th day of June, 1924, while she was driving through the town of Buena Vista, Chaffee county, Colo. Sheriff Hutchinson had been notified by telephone message from the sheriff of Lake county, Colo., that some woman was driving a stolen car from Oklahoma, and that the numbers had been altered on the engine block, and was asked by the said sheriff to watch for her and investigate the car, to see if the numbers were altered, and, if they were, to arrest the woman. He was also told by the sheriff of Lake county that the woman had been under arrest, but had escaped from the deputy sheriff. No warrant had been issued for her arrest, but the sheriff of Lake county informed defendant Hutchinson that there were two parties making a complaint, or who were about to make a complaint against her. In pursuance of these instructions the sheriff attempted to arrest the plaintiff in error, and in so doing stepped in front of the car which she was driving, signaled to her, and then jumped upon the running board of the car, and it is claimed in her petition that, with a willful disregard of her rights and safety, and in violation of his official duty, he drew a revolver and shot her through the left knee joint.

Defendant in error Hutchinson admits that he was attempting to make the arrest, but claims the gun was accidentally discharged; that he had no intention of shooting the plaintiff in error, and that she was guilty of careless and reckless acts, contributing to her injuries. At the close of all the evidence the court sustained a motion for an instructed verdict as to defendants in error, holding that the evidence conclusively showed that the sheriff's gun was discharged accidentally, and further that plaintiff in error was guilty of contributory negligence by not stopping, regardless of whether she knew Hutchinson was the sheriff or not.

[1] Plaintiff in error argues that she was committing no crime at the time of the arrest, that the sheriff had nothing more than a mere suspicion of any wrong, and that he had no justification whatever for the arrest.

Section 1379, Colorado Compiled Laws of 1921, empowers such officer as a sheriff to take and hold possession of any automobile, the engine number of which has been altered, changed, or obliterated, or of any automobile which such officer may have good and sufficient reason to believe is not in the rightful possession of the driver. It is further by section 1376 of said laws made the duty of the sheriff and other officers of the state to investigate any alleged violation of the Auto-

mobile Act. Penalties are also provided by the statutes of Colorado for the stealing of automobiles. There was no way that the sheriff could examine as to whether the numbers on the car had been altered, changed, or obliterated, except to detain the plaintiff in error and examine the car. He had been instructed by the sheriff of the neighboring county that the woman he was to look for was driving a stolen car; that she had been placed under arrest, and had escaped from the deputy sheriff. Under these circumstances we think the sheriff of Chaffee county, even without a warrant, was justified in arresting the plaintiff in error. He had reasonable cause to believe, either that plaintiff in error had been connected with a felony (the stealing of an automobile being such crime under the laws of Colorado), or at least that a crime was being committed in his presence. Carroll et al. v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543; Garske v. United States (C. C. A.) 1 F.(2d) 620. The question of whether the arrest was justified is not, however, of particular importance here, as, if excessive force were used, it is no justification as far as Hutchinson is concerned that the arrest was or was not legal. For the purpose of this opinion, therefore, under the record as it stands, we accept the situation as one which authorized defendant in error sheriff to arrest plaintiff in error.

[2] Counsel for plaintiff in error argues that the sheriff was negligent, and that the shooting, if not intentional, was at least the result of negligence on his part. The trial court in its opinion seems to have been of the belief that the plaintiff in error was guilty of contributory negligence. There is no claim of negligence in the complaint, and as the pleadings stood when the case was tried there was no question of negligence or contributory negligence involved. Under the complaint this action narrows down to the one vital question, viz: Did defendant use excessive force in making the arrest? And a secondary question: Was this, under the evidence, for the jury to determine? In some states statutes seek to control the action of officers in making arrests. Section 6793 of the Colorado Compiled Laws of 1921 provides for a penalty in case an officer shall assault or beat an individual under color of his commission or authority without lawful necessity so to do. Regardless of statutes, however, officers do not have absolute license to use any force they may choose in making arrests. There must, of course, be a discretion in an officer as to the force necessary to be used on such occasions; but officers are sometimes inflated with a high conception of their office, and exercise power in an unreasonable, arbitrary and unjustifiable manner. Officers are not relieved from the ordinary dictates of humanity. While they are clothed with great power, they have no right to abuse the same. An officer who intentionally uses more force than is reasonably necessary in making an arrest is oppressively discharging the duties of his office. What amounts to reasonable force depends upon the facts of each particular case, and is ordinarily a question of fact for the jury. This court laid down the rule in Castle v. Lewis, Sheriff, 254 F. 917, 925, 166 C. C. A. 279, 287, as follows: "Conceding, for the purpose of considering this issue only, that the petitioners were authorized to arrest the occupants of Mays' car without a warrant for the felony of introducing liquor into Osage county, that authority included the lawful power to use such force as they then had reasonable cause to believe, and in the exercise of their sound discretion they did honestly believe, was necessary to make the arrest; but it included the right to use no more, and the use of any greater force was beyond the scope of their authority, unauthorized, and without justification. Here, too, the measure of necessary force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary."

5 Corpus Juris, p. 424, § 59, states the matter as follows: "An officer who is making a lawful arrest, or has made an arrest, is justified in using such force as is reasonably necessary to secure and detain the offender, overcome his resistance, prevent his escape, recapture him if he escapes, and to protect himself from bodily harm; but he is never justified in using unnecessary force or treating his prisoner with wanton violence, or in resorting to dangerous means when the arrest could be effected otherwise. But within reasonable limits the amount of force and the means employed are necessarily left to the sound discretion of the officer, and this discretion is not subject to review by a court or jury unless wantonly or maliciously abused. The officer is not required to determine at his peril the precise amount of force necessary in each instance and to use that much and no more."

In Goold v. Saunders et al., 196 Iowa, 380, 384, 194 N. W. 227, 229, the Supreme Court of Iowa, referring to the statutes of that state providing that no unnecessary force or violence should be used in making an arrest, said: "In the construction of these

statutes we have uniformly held that the criterion of reasonable ground of belief and of the degree of force which may properly be used in making an arrest is that which a reasonably prudent person would exercise under like circumstances." See, also, 2 R. C. L. p. 474, § 32; State v. Phillips, 119 Iowa, 652, 94 N. W. 229, 67 L. R. A. 292; Weissengoff v. Davis, 260 F. 16, 171 C. C. A. 52, 7 A. L. R. 307; Firestone v. Rice et al., 71 Mich. 377, 38 N. W. 885, 15 Am. St. Rep. 266.

[3] *The duty of the trial court as to directing a verdict is well settled by numerous decisions of this court. A late case in which the matter is considered is New Amsterdam Casualty Co. et. al. v. Farmers' Co-op. Union of Lyons, Kan., 2 F.(2d) 214, 215, where this court said: "It is the duty of the trial court to direct a verdict at the close of the evidence in two classes of cases: (1) That class in which the evidence is undisputed; and (2) that class in which the evidence is conflicting, but is of so conclusive a character that the court, in the exercise of a sound judicial discretion, ought to set aside a verdict in opposition to it" (citing a large number of cases).

In Hart v. Northern Pac. Ry. Co., 196 F. 180, 187, 116 C. C. A. 12, 19, this court after quoting from the Supreme Court of the United States in Southern Pacific Co. v. Pool, 160 U. S. 438, 16 S. Ct. 338, 40 L. Ed. 485, said: "The Supreme Court had before that time in repeated cases held that the court might withdraw a case from the jury and direct a verdict for the plaintiff or the defendant, where the evidence was undisputed, 'or of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it.'" See, also, Chicago G. W. Ry. Co. v. Price, 97 F. 423, 38 C. C. A. 239; Patton v. Texas & Pacific Railway Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361. The trial court was justified in directing the verdict, if the evidence was of such a conclusive character that, in the exercise of its sound judicial discretion, it would have been compelled to set aside a verdict for plaintiff in error. We cannot agree with the learned court that the evidence was of this character. The evidence was conflicting, and the great number of witnesses were arrayed on the side of the defendant; but there was testimony of the plaintiff in error which, if believed by the jury, might entitle her to a verdict. Her testimony undoubtedly is shaken somewhat by

that of defendant in error's witnesses, but the weight of the testimony is for the jury. We refer to the evidence briefly and with little comment, because of the necessity of another trial in this case.

Plaintiff in error was the only witness to testify that the sheriff deliberately shot her. Defendant in error testified it was an accident and other witnesses corroborated him. Certain physical facts offer some corroboration of the plaintiff in error's story that, instead of trying to escape at the time of her arrest, she was trying to stop the car. Plaintiff in error testified on her direct examination that she threw on the brakes when the sheriff waved to her on the street; that she turned the key in the car and was going after her emergency brake at the time she was shot. We quote from her testimony as follows:

"He came inside the car. He had his head under the top. His whole body and arms were inside the car when he shot me, and that car must have been standing perfectly still when he shot me. * * * When he shot me, he said he would drag me out of there dead, and cursed again, and I began to scream, and this man that was sitting by the side of me, he said: 'Why, you are crazy! What! Are you trying to kill that woman?' * * * While he was in the doctor's office, he called the sheriff over the phone, and told him he had this man, 'What do you want me to do with him? He said, 'I shot the woman,' and then he hung up the receiver. * * *"

On cross-examination she testified:

"Q. Where did you first see him on that day? A. Why, when he jumped in my car and shot me was the first time I ever saw him.

"Q. Where did he jump from? A. Why, he jumped from right at the running board right on the car.

"Q. No; but where? Didn't you see him until he jumped onto the car? A. I seen him when he ran in front of my radiator.

"Q. About how far in front of the radiator? A. It looked to me like he touched it. * * *

"Q. Where did your car stop after he jumped onto it? A. Stopped right there. It was stopped when he shot me. * * *

"Q. Well, what distance was he from you? A. I said it looked to me as though he was against the radiator.

"Q. So near when you stopped your car? A. Yes, sir.

"Q. Did it stop at once? A. Yes; it stopped so quick it killed the engine.

"Q. Was it stopped when you were shot? A. Yes, sir; standing perfectly still.

* * *

"Q. And after that you say he jumped on the running board of your car, or stepped on it, and shot you? A. After when?

"Q. After your car was stopped? A. Yes; I stopped the car when I seen him jump in front of the radiator, and he bounced over in front of the radiator, and jerked his gun, and jumped on the running board.

"Q. Your car was practically still when he shot you? A. Yes, sir.

"Q. Had he any reason for shooting you? A. Not a bit.

"Q. Did you ever see him before? A. No, sir.

"Q. Just apparently wantonly shot you? A. It seemed to me he shot me on purpose.

* * *

"Q. After you were still in the street, he stepped on the running board on the street and shot you. That is a fact, as you want the jury to understand you? A. He jumped on the running board and shot me while I was stopping the car."

Witness Fred Underwood, Jr., for defendant, testified:

"Q. And at what moment did he draw his gun? A. Well, I saw the gun as he got on there just—the appearance to me was that he drew the gun as he jumped on the car.

"Q. You heard the report of the gun? A. Yes.

"Q. And that went off pretty soon after he got on, did it? A. Well, not so very long, of course.

"Q. Now, exactly what did he do with that gun as you were watching him getting on that car? A. Exactly?

"Q. Yes, what did he do with that gun? A. He pointed the gun at those in the car.

"Q. He pointed his gun at those in the car? A. Yes.

"Q. And that is when it went off, is it? A. No; I didn't see it exactly that way. It went off during the time he was trying to stay on the running board.

"Q. But it was during the time his gun was pointing at the passengers in the car? A. It evidently was.

"Q. Because it hit Mrs. Little. That is a fact, isn't it? A. Yes; it evidently was."

Lester Glenn, a witness on behalf of the defendant, with reference to the accident, testified as follows:

Q. Did you hear the gun fired? A. Yes, sir.

"Q. How soon after he got on the car? A. Well, it wasn't very long. He put his hand over in the car, it seemed to me like, and then it went."

[4] This testimony cannot be lightly brushed aside by the court, because contradicted by other witnesses. There is evidence that defendant in error Hutchinson did not intend to shoot the plaintiff. There is also evidence that he did not think it necessary to use a gun at all in making the arrest. He makes no claim that under the circumstances he was justified in shooting the plaintiff in error. His defense is that the shooting was an accident, occurring because plaintiff in error did not stop the car when he, as an officer, signaled to her, and that in trying to restore his equilibrium, after he jumped on the running board of the car, he unconsciously, automatically, gripped the gun, and it went off; that he had no intention of firing it. We are satisfied that the question of whether or not, under all the circumstances presented by this record, Sheriff Hutchinson used more force to make the arrest than he in the exercise of a sound discretion had reasonable cause to believe was necessary, was a question of fact to be determined by a jury.

As to the defendant in error American Surety Company of New York, it seems to be conceded throughout the trial that Hutchinson was sheriff of Chaffee county, and that what he did was by virtue of his office. We are not favored with a brief or argument by either of the defendants in error, and therefore are uninformed as to whether the surety company has any theory of nonliability for the acts of the sheriff.

The case is reversed and remanded, with instructions to grant a new trial.