

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-22-2005

# USA v. Zavala

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4654

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Zavala" (2005). *2005 Decisions.* Paper 794.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/794

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-4654

_____

UNITED STATES OF AMERICA

v.

FRANCISCO ZAVALA,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No.02-cr-00446-2
District Judge: Jan E. DuBois

_____

Submitted under Third Circuit LAR 34.1(a)
on January 14, 2005

BEFORE:  ROTH and CHERTOFF* Circuit Judges, and
IRENAS**, District Judge

(Opinion filed: July 22, 2005)

_____

*This case was originally submitted to the three judge panel of Roth, Chertoff and
Irenas.  Judge Chertoff subsequently resigned from the Court.
**Honorable Joseph E. Irenas, United States District Court Judge for the District
of New Jersey, sitting by designation.

---

OPINION

---

ROTH, Circuit Judge:

Francisco Zavala has appealed his convictions on three counts of a superseding indictment. The indictment charged Zavala in Count 1 with conspiracy to distribute and to possess with intent to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii) and § 846; in Count 2 with attempting to possess with intent to distribute in excess of 500 grams of methamphetamine, and aiding and abetting such, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), 846 and 18 U.S.C. § 2; and in Count 3 with knowingly and intentionally using a communication facility, that is, the mail, in facilitating the conspiracy to distribute and possess with intent to distribute methamphetamine described in Count 1, and the attempted possession with intent to distribute methamphetamine described in Count 2, and aiding and abetting such, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2.

The jury convicted Zavala on all counts. Sentence was imposed on December 5, 2003, and Zavala appealed, contesting both the convictions and the sentence imposed.[*]

---

[*] Zavala first contested his sentence on appeal in supplemental briefing submitted to this Court following United States v. Booker, 125 S. Ct. 738 (2005).

2

For the reasons stated below, we will affirm Zavala's conviction, vacate his sentence, and remand for a resentencing consistent with United States v. Booker, 125 S. Ct. 738 (2005).

## I. Factual Background and Procedural History

As the facts are well known to the parties, we give only a brief description of the facts and procedural posture of the case.

Government witnesses testified to the following facts. On June 25, 2002, co-defendant Jose Zavala (also known as Anthony Zavala) mailed a packaged from a United States post office in Los Angeles, California. Jose Zavala is the brother of the defendant, Francisco Zavala. The sender on the package was listed as "David Martin" and the package was addressed to "Monica Flores" at an address in Philadelphia, Pennsylvania. The mailing was videotaped by surveillance cameras at the post office. On June 26, 2002, a postal inspector retrieved the package and obtained a search warrant for the package. When the package was opened, it was found to contain 1,302 grams of methamphetamine. On June 27, 2002, postal inspectors, along with agents from other law enforcement agencies, made a controlled delivery of the reassembled packaged.

Surveillance officers observed that co-defendant Michael Gonzalez arrived at the delivery address at approximately 9:22 a.m. and Francisco Zavala arrived in a separate vehicle at approximately 9:57 a.m. The postal inspector made delivery at approximately 10 a.m. Michael Gonzalez signed for the package on the steps of the delivery address and

3

indicated that he could take delivery for Monica Flores. Francisco Zavala was in the general area. Michael Gonzalez put the package on the steps. Francisco Zavala took the package, placed it in his vehicle and, at approximately 10:05 a.m., drove away. At the same time, Michael Gonzalez left in his vehicle in a different direction.

Both Gonzalez and Zavala were followed by surveillance units, who stopped them and took them into custody. Zavala was read his *Miranda* rights but nevertheless made a statement to the police. Agent Kennedy testified that Zavala said that he had asked Migueito [Michael Gonzalez] to accept a package for him and that he offered to pay Migueito a couple of hundred dollars to accept a package. Zavala stated that there was "meth inside of the package" and that "he knew he was in trouble but he was unwilling to get anyone else in trouble." Agent Nowelski testified that Zavala said that "[Michael Gonzalez] was just receiving $200 for the delivery address he provided to Mr. Zavala" and that "he [Francisco Zavala had] mailed [the package] to himself and that he flew back to Philadelphia to retrieve it." A postal inspector questioned co-defendant Jose Zavala. Jose Zavala denied mailing the package to his brother and claimed that "he is not aware of what his brother does." He made the latter statement after being warned of his *Miranda* rights and after having been informed that the package in question contained methamphetamine.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction

4

to consider the appeals of the defendant's convictions and the sentences imposed. See 28 U.S.C. §1291 and 18 U.S.C. § 3742(a).

Francisco Zavala's first claim is for prosecutorial misconduct. If no contemporaneous objection was made to the District Court for prosecutorial misconduct, we review for plain error that must show "egregious error or a manifest miscarriage of justice." United States v. Brennan, 326 F.3d 176, 182 (3d Cir. 2003) (quoting United States v. Brown, 254 F.3d 454, 458 (3d Cir.2001)). On the other hand, if a contemporaneous objection is made: "a finding of prosecutorial misconduct requires reversal unless the error is harmless." Id.

Similarly, Francisco Zavala's claim that the testimony of a witness was improperly admitted is reviewed under a plain error, absent a contemporaneous objection. See United States v. Tyler, 281 F.3d 84, 100-01 (3d Cir. 2002).

Lastly, Francisco Zavala argues that there was insufficient evidence to support his conviction under count 3, for knowingly or intentionally using a mail facility to facilitate a drug offense, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. "[W]hen deciding whether a jury verdict rests on legally sufficient evidence . . . . [i]t is not for us to weigh the evidence or to determine the credibility of the witnesses. Rather, we must view the evidence in the light most favorable to the government . . . and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998) (citations and

5

quotation marks omitted).

### III. Discussion

In support of his appeal, Zavala contends that the prosecutor committed several acts of misconduct during the trial. The first such instance concerns the suppression hearing testimony of Monte Jones, a government witness. The parties agreed that Jones's testimony from that hearing would be transcribed for use at trial rather than flying Jones back from California to Pennsylvania for later trial proceedings. At the trial, the prosecutor read Jones's direct examination to the jury. At the end of the direct examination, the prosecutor attempted to read Jones's cross-examination to the jury. The following colloquy took place:

> Zittlau [Asst. U.S. Attorney]: I'll read the questions posed by counsel for Jose Zavala and the answers of Monte Jones under oath.
>
> Bosch [Counsel to Jose Zavala]: Your Honor --
>
> Zittlau: Or if you want to do it, that's fine too.
>
> Bosch: I -- I assumed that it was only the direct examination that is going to be read to the jury. I --
>
> Eubanks [Counsel to Francisco Zavala]: Yeah.
>
> Bosch: We had no discussion about cross-examination. I -- and I would object to cross-examination being --
>
> Zittlau: Oh, that's fine. I just was trying to be fair, because --
>
> The Court: All right.
>
> Zittlau: -- we --

6

The Court: No.

Zittlau: -- agreed to read both.

The Court: We don't need any speeches.

Bosch: No. I was not. I was just going to say --

The Court: You object to the cross-examination?

Bosch: Yes, Sir.

The Court: And you agree to it, Mr. --

Zittlau: I agree to it.

The Court: -- Zittlau. And you have no position, Ms. Webb Eubanks?

Eubanks: Oh, I agree with everyone else.

The Court: Well --

Eubanks: No. I don't have a position., Your Honor.

The Court: That's very good, Ms. Webb Eubanks. Thank you. And then your objection is sustained by agreement.

Bosch: Thank you, sir.

Zittlau: All right. Now, your Honor, if there was any question -- I'm just checking Okay. There was questions by Ms. Eubanks that were also asked. Do you wish me to read those questions and the answers given by Monte Jones under oath?

Eubanks: No.

The Court: There's no need to do that. Ms. Eubanks has said no. You've used the deposition transcript for the purposes you intended, is that correct?

Zittlau: Correct, Your Honor.

7

The core of Francisco Zavala's counsel's argument on appeal is that, although the direct testimony was properly read to the jury per the stipulation, the attempt to read testimony from the cross-examination was improper because it "was contrary to -- the stipulation" and that the effect of the colloquy was to leave jurors with the impression that there was other "testimony exist[ing] that they were not permitted to hear." Even assuming that there is anything here that might be construed as prejudicial, the prosecutor's attempt to introduce the cross-examination testimony was not improper because it was, in fact, fully authorized by the February 13, 2003 stipulation.

On February 13, 2003, the following colloquy took place:

The Court: And you flew [Mr. Monte Jones] --

Zittlau: From California, yes, your Honor. And defense counsel has graciously stipulated that his testimony today, direct and cross, may be read at the trial if your Honor denies the motion to suppress and this case proceeds to trial, to avoid flying him back for the trial.

And so his testimony will be transcribed and then we'll, by stipulation, read that testimony at the time of trial so he doesn't have to come twice to Philadelphia.

The Court: Is that agreed?

Seabold [Counsel for Jose Zavala]: Yes, it is, your Honor. Do you understand?

Defendant J. Zavala: Yes, I do.

The Court: And Ms. Webb Eubanks?

Eubanks: Yes, your honor.

8

The Court: And Francisco Zavala, do you argee to that?

Defendant: F. Zavala: Yes, sir.

The Court: Do either of the defendants[**] have any questions about that agreement?

Defendant J. Zavala: No, your Honor.

Defendant F. Zavala: No.

The Court: Well, then what we're going to do is we'll hear the testimony of this witness and if the suppression motion is denied and the case goes to trial, the testimony of this witness will be used at trial in the same way as if the witness were present. So the defendants will fully cross-examine the witness.

The stipulation, as proposed by Zittlau, expressly provided for the introduction of both direct and cross-examination testimony at trial. It was that proposal which was accepted by defendants and defendants' counsel. For that reason, Zittlau's proposal to read the cross-examination did not violate the stipulation.

Zavala also argues that Zittlau forced defense counsel to respond to his attempt to introduce the cross-examination testimony, leaving jurors with the "image of defense counsel as seeking to suppress testimony and reneging on an alleged stipulation." The transcript tells a different story. Moreover, it highly doubtful that the jury would have construed this colloquy as an effort to suppress evidence from their view. We find, therefore, no prosecutorial misconduct.

---

[**] Codefendant Michael Gonzalez is a fugitive: he was released on bail pending trial.

9

Zavala points to two other alleged instances of prosecutorial misconduct.  First, the prosecutor stated in his opening:  "And then [Jose Zavala] was asked [by the postal police], well, what was in this package that you mailed . . . .  And he says he couldn't completely remember, but it was toys and stuff like that.  This is not toys.  This is approximately three pounds of drugs.  Now why did he [Jose Zavala] not tell the truth?"  Francisco Zavala's trial counsel objected that this was argument.  The objection was sustained.  A colloquy ensued and the District Judge interrupted Zittlau in quick succession as he attempted twice more to make argument rather than describe what the evidence would show.  No curative instruction was sought by trial counsel.  We do not disagree that argument by the prosecutor in his opening statement was improper.  But not every error by a prosecutor, even when repeated, is reversible error.  This is particularly true on these facts, where to the extent that the jury believed the prosecutor, i.e., that Jose Zavala lied to the postal police regarding the contents of the mailing, that lie directly implicated only Jose Zavala, not Francisco Zavala.  Moreover, the overwhelming bulk of the testimony against Francisco Zavala was that of law officers who testified to their observations arising from surveillance of Francisco Zavala, their seizure of drugs from Francisco Zavala's car, and post-arrest admissions of guilt made by Francisco Zavala.  On these facts, it is "highly probable that the error did not contribute to the judgment."  United States v. Zehrbach, 47 F.3d 1252, 1265 (3d Cir. 1995) (en banc) (quoting Government of Virgin Islands v. Toto, 529 F.2d 278, 284 (3d Cir.1976)).

10

Finally, Zavala argues that the prosecutor engaged in prosecutorial misconduct for "boldly reprimand[ing] defense counsel in the presence of the jury by stating, 'If you're going to read the statement, read it correctly.' Zavala contends that this improper comment -- made not in the form of an objection, but directly to defense counsel -- again conveyed to the jury that the defense was attempting to mis-characterize evidence by failing to read the statement in question "correctly." The transcript tells a more balanced story:

> Zittlau: Well, you didn't read it. A couple hundred [dollars]. If you're going to read the statement, read it correctly. Objection.

> The Court: Just object. Wait a minute. We ought to have the rules that I've established for years, and you all know better. Mr. Zittlau, no speeches. Ms. Webb Eubanks, no wandering through a statement. You have a statement. Ask questions based on the statement. Don't leave out words.

> Eubanks: All right.

> The Court: Now, let's proceed in a professional way. You both know how to do it.

Because the jury heard both Eubanks' original question and the rephrased questions she asked after Zittlau's objection, the jurors were aware that Eubanks was hiding nothing of substance from them but had only asked her original question somewhat informally. Thus, Francisco Zavala was not prejudiced.

Zavala's next contention is that Agent Terry's expert witness testimony violated Zavala's Sixth Amendment right to confrontation. Agent Terry testified as to the number

11

of milligrams of methamphetamine in a clinical dosage unit  – 5 mg, the number clinical

dosage units possessed by Zavala – 260,000, the number of street dosage units that

amounted to –  4,000, and the street value of the drugs – $8,000 to $14,000 per pound.

Terry concluded that the amount of drugs involved here, about 3 pounds or 1302 grams,

was consistent with intent to distribute.  His testimony was based on his experience, on

the position of the DEA bases on its investigations, and on Terry's "interviews of subjects

who [had been] arrested following methamphetamine investigations."  Neither the

interviewees nor the DEA officials who determined the DEA position testified at trial.

Zavala now argues that the admission of this testimony violated his Sixth

Amendment confrontation rights as established in Crawford v. Washington, 541 U.S. 36

(2004).[***]  He argues that the absence of the out of court declarants, absent an opportunity

to cross examine, contravenes Crawford.  We disagree.  This type of expert witness

testimony, based on inadmissible evidence accrued over years of drug investigations and

discussed by investigators in forming their opinions is exactly the type of testimony,

based on inadmissible evidence which is permitted by Federal Rule of Evidence 703:[****]

---

[***] We note that no contemporaneous objections were made by Zavala on this basis, and we also note that Crawford was decided after Zavala's trial proceedings had ended.

[****] Cf. Ross Andrew Oliver, Note, *Testimonial Hearsay as the Basis for Expert Opinion: The Intersection of the Confrontation Clause and the Federal Rule of Evidence 703 after* Crawford v. Washington, 55 HAST. L.J. 1539, 1558 (2004):  "In a case where an expert forms an opinion from many sources, including his own experience, rather than simply relating testimonial hearsay to the jury, there is less risk of a Confrontation Clause violation." and "On the other end of the spectrum exist cases where an expert has relied on a number of sources and types of data and has added significant expertise to interpret

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. *If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.* Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

(emphasis added).

Moreover, Crawford involved the recorded statement of defendant's wife, implicating him in the charged offense. The statements here are generic descriptions of drug transactions. They do not involve this case or Zavala's participation in it. This distinction removes this case from the ruling established in Crawford. For the same reasons, the admission of the expert testimony does not conflict with Ohio v. Roberts, 448 U.S. 56, 65-66 (1980).

Third, Zavala contends that there was insufficient evidence to support his conviction under Count 3, committing or aiding and abetting the illegal use of a communication facility. He argues both that there was insufficient evidence that he knew of the underlying crime, meth distribution and that the evidence did not establish that he intended to illegally use a communication facility. However, our review of Zavala's

---

and analyze them. In these circumstances, a confrontation violation likely will not exist because the expert's opinion is *truly original* and a product of his special knowledge or experience, and the defendant can test its *reliability by cross-examination* of the expert." *Id*. at1560. (emphasis added).

13

statements to the authorities demonstrates ample evidence from which a jury could convict him of this offense.

Finally, Zavala has asked for resentencing in light of United States v. Booker, 125 S. Ct. 738 (2005). We have determined that Booker sentencing issues are best determined by the District Court in the first instance. We will therefore vacate the sentence and remand for resentencing in accordance with Booker. See United States v. Davis, 397 F.3d 173, 183 (3d Cir. 2005).

## IV. Conclusion

For the reasons stated above, we will affirm Francisco Zavala's judgment of conviction, vacate his sentence, and remand for a resentencing consistent with Booker.